MORSE, administrator, &c., *vs.* BROCKETT.

MORSE, administrator, &c., *vs.* BROCKETT.

SAMUEL WHITE *vs.* MORSE, administrator, &c., and others.

E. M. agreed, on good consideration, to pay, take up and discharge, to the amount of $20,000, the liabilities of S. W. as indorser or surety for A. W. and A. M. or the firm of which they were members. He took up some of those liabilities, to the amount of $16,705.80, including three judgments against S. W., and those judgments were assigned to him (E. M.;) but he failed to perform his agreement in full. *Held*, that E. M. having, in effect, assumed the payment of S. W.'s liabilities to the extent of $20,000, and agreed to satisfy them, he thereby became the principal debtor, and could not take the judgments to himself by assignment, and enforce them against S. W., contrary to his promise.

As between a first and second incumbrancer by mortgage upon the same premises, where the securities were given pursuant to one and the same arrangement, no money passing between the parties at the time, the second mortgagee has a right to insist that the first mortgage has no force, as against his junior mortgage, except to the extent that the prior mortgagee has performed the agreement under which such mortgage was given.

Accordingly, where the consideration of the first mortgage was the agreement of the mortgagee that he would take up and satisfy certain demands on which the mortgagor was liable, to the extent of $20,000; *held*, that neither the mortgagee nor his personal representative could enforce such mortgage, to the detriment or injury of the mortgagor, except to the extent that he had performed the agreement which constituted its consideration and gave it validity.

And, less than $20,000 having been paid by the mortgagee, on account of such liabilities; *held*, that the mortgage should be reduced, by a deduction of the deficiency.

APPEALS, by Geo. E. Morse, from judgments entered upon the reports of a referee.

The first two actions were brought by Geo. E. Morse, as administrator &c. of Ellis Morse, deceased, against Samuel White and others, to recover the amount due upon three judgments recovered against the defendants and assigned to said Ellis Morse. Samuel White having died during the pendency of those suits, the same were continued against his administrator, D. Z. Brockett. The third action was brought by said Samuel White,

against Geo. E. Morse, as administrator &c. and others, to restrain the foreclosure of a mortgage by advertisement under the statute.

(See *S. C.*, briefly reported, 3 *Thomp. & Cook*, 773.)

*Conkling, Lord & Coxe*, for the appellant.

*C. & J. Mason*, for the respondents.

*By the Court*, BOCKES, J. The defence in the first two suits above entitled, and the basis of action in the third, grew out of the same transaction, to wit: an alleged agreement entered into between Ellis Morse, deceased, and Samuel White, the last named being the defendant in the former suits and the plaintiff in the latter. Therefore the three actions were very properly heard and determined by the same referee, as the facts were the same in each. The referee found that in Nov. 1855, Samuel White was indorser or surety on commercial paper made by or for the benefit of the firm of A. Morse & Co., to an amount exceeding $35,000 ; and that Alexander White, one of said firm, was indebted to him in the sum of about $1,300 ; and that in order to secure him therefor, said Alexander confessed judgment for the sum of $36,750, which was duly docketed and became a lien on the farm of the said Alexander, worth from $30,000 to $40,000 ; that in May, 1857, the intestate, Ellis Morse, made an agreement with said Samuel White that if he, said Samuel, would satisfy and discharge his judgment for $36,750, and would procure John L. and DeWitt C. White, the sons of said Alexander, (to whom he had theretofore conveyed his said farm,) to execute and deliver to him, said Morse, a mortgage on said farm for $10,000, he, said Morse, would pay, take up and discharge the amount of $20,000 of the liabilities of said Samuel White as indorser or surety for said Alexander White and Alpheus

Morse, or the said firm of which they and John H. Brown were members, at the same time representing that he had made an arrangement with said firm and Morse and Brown to obtain security for the balance of the $20,000 he so agreed to take up and discharge; and that as part of the same arrangement or transaction, said Samuel was to receive from said John L. and D. C. White, a mortgage on said farm for $22,000, to secure and indemnify him for the balance of his indorsements and liabilities for said firm and for the indebtedness to him on the part of Alexander, which mortgage he did receive June 5, 1857, pursuant to such arrangement, and that he still holds the same; that relying upon such agreement and in consideration thereof, said Samuel did, on the 1st day of June, 1857, execute and deliver to said Morse a satisfaction of his said judgment, and that the same was on the following day satisfied of record, and the said John L. and D. C. White executed to him, said Morse, the mortgage for $10,000 on said farm, and the same was accepted by said Morse under said agreement, and the same was recorded and became a first lien on said farm after a judgment of about $3,000. The referee further found that said Ellis Morse omitted to perform the agreement on his part; that he became the assignee of the three judgments mentioned in the first two above entitled actions, which were obtained on paper, such as he had agreed to pay, take up and discharge, and which the plaintiff, in such actions, his administrator, now seeks to enforce; and that the aggregate of all such paper paid, taken up and discharged by him pursuant to such agreement, including said judgments of which he became assignee and owner, computed to June 1, 1857, amounted only to the sum of $16,705.80, leaving $3,294.20 unapplied, contrary to the terms of his aforesaid agreement. The referee held that under this state of facts, the personal representative of Ellis Morse could not enforce those judgments,

so ·obtained on paper which the latter had agreed to take up and discharge; nor could he enforce the $10,000 mortgage to the detriment or injury of said Samuel White, beyond the amount remaining after deducting the said sum of $3,294.20, so as aforesaid unapplied to paper on which the latter was liable, according to the terms of the agreement between them.

The first point raised and urged by the appellant's counsel is, that the findings of fact by the referee in regard to the agreement above stated is unsupported by the evidence. In this, I think, he is under mistake. Several witnesses testify to the agreement substantially as found. Certainly an agreement was made under and pursuant to which the respondent discharged his judgment of $36,750 and two mortgages, one for $10,000 to Ellis Morse, the other for $22,000, to White, were executed and accepted. That the judgment was discharged and the two mortgages were given, is shown by the papers and records; and it is put beyond doubt that these acts were parts of the same transaction, and were done in pursuance of one and the same arrangement. It is not pretended that any money passed between the immediate parties, as a consideration for the discharge, or as a consideration for either mortgage. Nor is there any proof whatever of any other or different arrangement or agreement than that stated by the referee. Such agreement in substance is testified 'to, and proceedings were taken by the parties going to its recognition and fulfilment. None other is at all indicated or supported by the proof. It is not enough to meet the case to say that such arrangement was unreasonable as regards Ellis Morse — too improbable to be credited. Precisely what inducements then existed, which controlled Morse's action, may or may not be now apparent, after the lapse of so many years. It seems that he, like White, the respondent, was considerably involved in the business affairs of A. Morse & Co., and he, doubt-

less, anticipated some advantage to himself from the arrangement, or some advantage from it to others whom he wished to serve. On the other hand, why should Samuel White discharge a judgment, which was his abundant security, unless he could be protected by some new agreement, in effect like that which he insists was made, and which he supports by direct proof? The question, however, is not whether the alleged agreement was injurious or advantageous to one or the other of the parties — not whether it was a wise or an unwise one, but, was it in fact made? The evidence is to the effect that it was considered and adopted, as the referee has certified; and we must now accept his findings as the truth of the case.

It must then be assumed that Ellis Morse agreed, on good consideration, to pay, take up and discharge, to the amount of $20,000, the liabilities of Samuel White, as indorser or surety for Alexander White and Alpheus Morse, or the firm of which they and Brown were members. This, it seems, he neglected to do in full. He took up some of those liabilities and became the assignee and owner of the three judgments recovered on similar paper, all, however, falling short of the $20,000 he had agreed to satisfy. The question now is, could he in his lifetime, or can his personal representative now, enforce collection against Samuel White of those demands? Most clearly not. He had in effect, and in so far as White was concerned, assumed their payment himself; and it matters not that in form he took an assignment of the judgments. As to White he became the principal debtor on those demands, to the extent of $20,000. Having agreed with White to satisfy them, he could not take them to himself by assignment, and enforce them against his promise. So I agree with the learned referee that Samuel White was entitled to the benefit of performance by Ellis Morse of his agreement, and to be relieved from liability to the extent of such perform-

Morse *v.* Brockett.

ance. True, those particular demands in judgment were not specified by dates and amounts, as those which Morse was to take up; nor were any of the many demands which should make up the $20,000, covered by his agreement, particularized. But they came within the general description employed by the parties to show his obligation; and the fact that they were then in judgment, and owned by Morse, and that he immediately paid other claims similarly situated, never made any attempt to enforce them during his life, although he lived ten years thereafter, and that they were omitted from the schedule of claims secured by the $22,000 mortgage; and the further fact that he asserted that he had no other claim against any of the White family except the $10,000 mortgage, and that the aggregate amount paid by him on paper he agreed to take up, including these demands, fell short of $20,000, will support the conclusion that the demands in judgment, now sought to be enforced by his personal representative, were intended by the parties to be satisfied according to the agreement, and, as the referee has found, were in fact taken up by Morse pursuant thereto. In this view of the case, the judgment directed and entered in each of the first two above entitled actions should be affirmed; unless, indeed, some error exists in the admission or rejection of evidence. This subject will be hereafter examined. There are other grounds of support for those judgments urged upon our consideration by the learned counsel for the respondent; but the above conclusion renders their examination unnecessary.

In the third action above entitled, the relation of the parties before the court on the appeal is, that of first and second incumbrancer by mortgage upon the same property; and it is claimed by White, the plaintiff in that action, that Morse's prior mortgage has no force as against his junior mortgage, except to the extent that

Morse, the mortgagee, performed the agreement under which the mortgage was given.

Both securities were given pursuant to one and the same arrangement. No money passed between the parties at the times they were made and delivered; and the consideration of the $10,000 mortgage was the agreement by Morse, the mortgagee, with White, on good consideration, that he would advance money and take up — or, which is the same thing — take up and satisfy certain outstanding demands on which White was liable, to the extent of $20,000. Now it seems plain that Morse could not (nor can his personal representative now) enforce this mortgage to the detriment or injury of White, except to the extent that he had performed the agreement which constituted its consideration and gave it validity. Giving him the full benefit of his part performance, and his advances fall short of the amount agreed upon in the sum of $3,294.20. It was in this view of the case that the learned referee held that, as against White, the mortgage should be reduced by a deduction of this amount. I am of the opinion that the referee was right in this decision. He gave Morse the benefit of all advances or payments made by him under the agreement, and held the mortgage good to the extent that he had performed. This is not a case where damages are to be allowed for a breach of an agreement. The question is, to what extent was the mortgage a lien on the premises covered by it, under the agreement which constituted its consideration. Not having made the advances or payments to the extent, and as the mortgagee had agreed, the instrument was without consideration as to the deficiency or money withheld by him, here found to be the sum of $3,294.20. To the extent of this deficiency the mortgage constitutes no lien, and the deduction directed by the referee was properly ordered.

I am of the opinion that the finding, that the whole

amount of paper taken up by Morse, in pursuance and performance of his agreement, including the three judgments specified in the first two above entitled actions, computed to June 1st, 1857, was, as stated, the sum of $16,705.80. As regards the so-called "Baker" judgment, it sufficiently appears that it had been arranged and was deemed by the parties paid, even if not technically satisfied, prior to the June agreement. Drafts had been received and accepted therefor; and the sheriff returned the execution "Satisfied in full, April 16, 1857."

Without here pointing out or collating the evidence, I am satisfied, on a careful examination of it, that the referee has allowed to Morse all he paid or advanced pursuant to the agreement on which the parties acted, and on the faith of which White discharged his judgment; nor does it matter, in so far as White is concerned, whether other securities were or were not given Morse by other parties, if it be true that White fully performed the agreement on his part according to its terms. It may be that the arrangement was in some respects changed or modified by and between some of the parties affected by it, other than White; or that Morse waived entire performance on the part of others. All this, if in fact done, would not disturb White's rights — he having no connection therewith. There is some evidence which tends, perhaps, to indicate a change or waiver to some extent of the arrangement as between Morse and the other parties, but none that I have observed showing other than full performance on the part of White as he originally agreed; and it may be that Morse had rights under his mortgage as against other parties, resulting from a change or modification agreed upon with them, but we are here examining the case only as between Morse's personal representative and Samuel White.

There is no error in the admission or rejection of evidence, calling for a reversal of the judgments or of either

of them.  In regard to some of the objections, it may be answered that they were general, merely, without any specifications of the grounds relied on to give them support.  In those instances, and where the objection might have been obviated if suggested, the exception is unavailing.

Nor was any evidence admitted against objection and exception which should have been excluded under section 399 of the Code, in so far as I am able to determine.  In some instances no exception was interposed to the disposition of the objection by the referee.  The ruling was "evidence taken subject to objection;" in which ruling, for aught that appears, the party objecting acquiesced; and ultimately the referee held and decided that all the testimony given by any of the parties to the several suits, in respect to any transaction or communication had by such party with Morse, the intestate, was inadmissible, and was to be deemed stricken out of the case in which such testimony was taken.

I am unable to discover anything in the additional findings of the referee certified by him on the settlement of the case and exceptions, or in his refusals to find as requested, affecting the merits.  The general findings are there substantially repeated, with some additional facts entirely in harmony with them ; and the refusals to find as requested afford no ground of error, inasmuch as they were either unnecessary and immaterial, or not supported by proof.

The above considerations, it is believed, dispose of all the questions necessary to the determination of the appeals in these actions, and lead to an affirmance of the judgments.

It has not been found necessary to cite authorities, or even here to refer by way of particular notice and comment to the many cases cited in the elaborate and able briefs submitted by the learned counsel who argued the appeals.

The difficulties in the case have arisen mainly, if not entirely, out of a disagreement as to the facts.

If the facts certified by the referee be well found, the case is relieved, as it seems to me, from all perplexity on the law. An application of the commonest principles of natural justice will then support the judgments.

Judgments affirmed with costs.

[THIRD DEPARTMENT, GENERAL TERM at Albany, June, 1874. *Miller, Bockes* and *Boardman,* Justices.]